ANGELA NEGRÓN MUÑOZ, PRESIDENT, ETC., Petitioner, *v.* ANDRÉS A. LUGO, WARDEN OF DISTRICT JAIL OF SAN JUAN, Respondent.

No. 459. Argued February 5, 1942.—Decided February 9, 1942.

*Santos P. Amadeo* and *Ernesto Juan Fonfrías* for petitioner.

MR. JUSTICE TODD, JR., delivered the opinion of the court.

The essential facts alleged in the petition for *habeas corpus* presented to us in this case are as follows:

That on August 25, 1940, Celedonio Rivera, a minor, 15 years old, attacked with a gem-razor blade another older boy while they were engaged in a fight; that the District Attorney of Bayamón, acting as a probation officer, after investigating the facts, placed said minor under the custody of his parents and imposed as a condition that he should report every eight days to the Justice of the Peace of El Dorado; that on January 17, 1942, the Juvenile Court for the Judicial District of Bayamón, without justification, as Celedonio Rivera had not committed any further delinquent act, convicted said minor, and without his father's consent ordered his confinement in the Mayagüez Industrial Reform School until he should attain the age of 19 years; that said minor is temporarily confined in the Minor's Section of the District Jail of San Juan, under the direction of the respondent, until a place is secured for him in the Mayagüez Industrial Reform School; that the order of the Juvenile Court of Bayamón was made without the judge taking into account the fact that the minor was a homeless child, had not committed any further offense after he had been placed under his father's custody, and was behaving well when the court made the order in question; that prior to and even since August 25, 1940, the minor's father had looked after him as a good family head and provided for all his needs in accordance with his circumstances, said father being an honest, industrious, and moral man without any criminal record.

It is alleged that the Juvenile Court of Bayamón abused its discretion, and that its order in the case in question is void and ineffective on the two following grounds:

"(a) Because the order of the Hon. Juvenile Court for the Judicial District of Bayamón, P. R., directing the confinement of minor Celedorio Rivera in the Industrial Reform School of Mayagüez, Puerto Rico, thus depriving said minor's father of his *patria potestas* without his consent, constituted an arbitrary, unreasonable, and unlawful exercise of the *parens patriae* authority.

"(b) Because the order for the confinement of said minor in the Industrial Reform School of Mayagüez, Puerto Rico, is detrimental to his welfare, and said minor should be under his father's custody so long as the latter fulfills his duty towards him and so long as said minor does not become a social menace, instead of being under the custody of the head of the Industrial Reform School of Mayagüez, Puerto Rico."

A further general allegation is made that everything above stated has been done in violation of Sections 25 and 33 of the Juvenile Court Act and of Sections 152, 153, and 166 of the Civil Code now in force, as well as in contravention of the public policy as laid down by the juvenile courts and by the principles and standards of modern penal science concerning the prevention and treatment of juvenile delinquency. In the prayer we are requested not only to set aside the order made by the Juvenile Court of Bayamón, but also to order the delivery of the minor into the custody of his father Víctor Benítez during good behavior.

Lastly, several grounds are advanced for invoking the original jurisdiction of this court, on which we do not deem it necessary to dwell in view of the conclusion reached by us to the effect that the petition fails to state facts sufficient to justify the issuance of the writ sought.

In the first place, it appears that it was the District Attorney of Bayamón who, acting as Probation Officer for the Juvenile Court, and after investigating the facts, placed the minor Celedonio Rivera under the custody of his parents, under certain conditions. Such action on the part of said officer without the intervention of the judge of the juvenile court is not authorized by Act No. 37 "To establish a system of juvenile courts; to provide for the care of neglected and delinquent children; and to provide for the disposition of all cases of juvenile delinquency, and for other purposes," approved March 11, 1915 (Session Laws, p. 71). It is provided by section 5 of said act that "the *fiscals* of the district courts and judges of the municipal courts shall

act and serve as probation officers of the juvenile court within their respective districts, and shall perform the duties hereinafter specified, within their respective municipal districts''; and section 10 provides that probation officers are vested with sufficient power to make arrests, to file complaints, and to prosecute any person coming under the provisions of the law; in section 11 it is provided that it shall be the duty of the district attorney, when acting as probation officer, to appear before the juvenile court to prosecute or to hold any hearing or trial presided by the probation officer; and, lastly, it is provided in section 13 that whenever a child shall have been placed in the custody of a probation officer it shall be the duty of such probation officer to transfer the case to the proper juvenile court, to take such child before said court, and in any such case the court may proceed to the trial of the case in the same manner as if the child had been brought before the court upon a petition as provided in the same act.

In none of the above provisions do we find any power conferred on the probation officer to commit permanently any child who has violated the law to the custody of his parents without the intervention of the court. On the contrary, section 20 acknowledges such power in the court when providing that:

"The court may continue the hearing of any case to any date, and may in the meantime commit the child to the care of a probation officer, or of some other person of good repute, or to a public or private institution for the care of children; or the court may allow the child to remain in its own home, if it has one, or may commit the said child to be cared for in the home of some family willing to take it, subject, in any such case, to the friendly supervision and visitation of the probation officer, in such form as the court may determine."

So that the action of the district attorney of the lower court in committing the minor to the care of his parents did not constitute a final disposition of the case, and the calling of the case for trial before the juvenile court was done pursuant to the exercise of its powers. [3] The allegation to

the effect that the order is void because, by committing the minor to the Mayagüez Industrial Reform School, it deprived the father of his *patria potestas* without his consent is entirely frivolous.

Section 33 of said act, as amended by Act No. 10 of April 6, 1916 (Session Laws, p. 43), partly provides as follows:

"This Act shall be liberally construed to the end that its purposes may be carried out, such purposes being the protection and welfare of the child, and affording children the means of reforming, of receiving an education and of becoming law-abiding citizens.

"The proceedings and judgments determined herein shall only imply the exercise of an eminent *patria potestas* by The People of Porto Rico over children, against whom no criminal precedent shall be established."

When applying the above provisions, juvenile courts do not have to get the consent of the parents in order to deprive them, temporarily, of the custody of their children. The order made implies the exercise of a superior parental authority by the People of Puerto Rico which is above that of the parents. Sections 152, 153, and 166 of the Civil Code, cited in the petition, which deal with the *patria potestas* of parents and with the cases where the courts might deprive them of it, are not applicable to the facts of the case at bar. The lower court, after a trial and in the exercise of its discretion, held that the welfare of the child Celedonio Rivera demanded that he be confined in the Mayagüez Industrial Reform School. Orders of this sort are not reviewable in a *habeas corpus* proceeding initiated in this court, for section 18 of the law provides that an appeal shall be allowed to the Supreme Court of Puerto Rico from the final order or judgment entered by the juvenile court against any party, and such appeal may be taken on behalf of the child by its parents, guardian or custodian, or by any relative of such child within the third degree of consanguinity.

For the reasons stated the writ sought must be denied.